IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT ALLAN WRIGHT,           )
                               )
               Plaintiff,      )
                               )
        v.                     )       1:14cv570
                               )
ZACKY & SONS POULTRY, LLC,     )
                               )
               Defendant.      )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff Robert Allan Wright brings suit against Defendant Zacky & Sons Poultry, LLC ("Zacky") for breach of an employment contract. Before the court is Zacky's motion to dismiss or transfer for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). (Doc. 2.) Wright opposes the motion. (Doc. 6.) For the reasons stated below, the motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) will be granted, and the case will be transferred.

## I.   BACKGROUND

Viewed in the light most favorable to Wright, the allegations of the complaint and supporting affidavits show the following:[1]

---
[1] The court may consider supporting affidavits when determining whether a plaintiff has made a prima facie showing of personal jurisdiction. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014) ("When a district court considers a question of personal

Wright is a citizen and resident of Moore County, North Carolina. (Doc. 1 ¶ 5.) Zacky is a California limited liability company with its principal place of business in Fresno, California. (Id. ¶ 6.) Zacky primarily conducts business in California, Nevada, and Arizona and has no offices in North Carolina.[2] (Doc. 5 ¶¶ 5-6.) Zacky also is not registered to do business in North Carolina, ships no goods to North Carolina, holds no bank accounts in North Carolina, and has no employees in North Carolina (outside of Wright's alleged activity).[3] (Id. ¶¶ 7-9, 11.)

On August 20, 2013, Zacky contacted Wright, who was in North Carolina at the time, concerning his possible employment

jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction.").

[2] Wright makes several allegations about Zacky's business, all of which are irrelevant to the current motion. For instance, Wright alleges that Zacky receives products from a separate business which operates a facility in North Carolina but makes no allegation that it even received products from that other business's North Carolina facility. (Doc. 7 ¶ 15.) Another allegation notes that Zacky receives "some of its eggs" from Virginia and Arkansas. (Id. ¶ 16.)

[3] Wright alleges that, at some point prior to his employment with Zacky, the company "sold products in North Carolina through Food Lion." (Doc. 7 ¶ 14.) He makes no claim, however, that his cause of action in any way arises out of such prior alleged contacts. Thus, any alleged activity by Zacky prior to the events surrounding Wright's cause of action is irrelevant. See Saudi v. Northrop Grumman Corp., 427 F.3d 271, 276 (4th Cir. 2005) (noting that to establish specific personal jurisdiction, a plaintiff's cause of action must "arise[] out of the defendant's contacts with the forum") (quoting Base Metal Trading, Ltd. v. OJSC, 283 F.3d 208, 213 (4th Cir. 2002)); see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009) (concluding that specific jurisdiction requires consideration of "*relevant* conduct" (emphasis added)).

as the company's President.  (Doc. 1 ¶ 8; Doc. 5 ¶ 12; Doc. 7 ¶ 3.)  Wright had made no solicitation of an employment offer to Zacky prior to that contact.  (Doc. 7 ¶ 3.)  Wright negotiated the terms of employment with Zacky via email "while being a North Carolina resident," but Zacky had Wright visit the company in California to finalize and execute the employment contract it drafted in California.  (Id. ¶ 6; Doc. 1 ¶ 10; Doc. 4 ¶¶ 5–8; Doc. 4-3 (showing expense reports submitted by Wright for travel to and his stay in California); Doc. 5 ¶ 13.)  No Zacky representative went to North Carolina to meet with Wright during the hiring process.  (Doc. 5 ¶ 14.)

Wright executed his employment contract with Zacky's human resources director, Ward Scheitrum, in California on September 30, 2013.  (Doc. 1 ¶ 10; Doc. 4 ¶¶ 4–5; Doc. 4-1 (the employment agreement).)  The contract afforded Wright a two-year employment term as Zacky's President and provided that Zacky could terminate Wright's employment only "for cause."  (Doc. 1 ¶¶ 10–12.)  It also included a monthly allowance for Wright to use an automobile.  (Doc. 4-1.)  Finally, the contract provided Wright a $20,000 relocation stipend, and Wright agreed to relocate from North Carolina to California "within the [first] 12 months of employment, per Company relocation policy."  (Id.; see also Doc. 5 ¶ 17 (acknowledging that Wright's "home" at the time of his employment was in North Carolina).)  The contract contained no

3

choice-of-law or forum-selection provisions selecting North Carolina as the applicable law or forum.[4]

During his employment with Zacky, Wright would fly to California on the Monday of most weeks to work for Zacky. (Doc. 5 ¶ 17.) Rather than putting his $20,000 relocation package towards moving to California, Wright instead spent the bulk of his stipend on flights back to North Carolina on the weekends. (Doc. 9 ¶ 8; Doc. 9-1 (noting reimbursement by Zacky for Wright's flights to North Carolina).) Wright traveled back from California to North Carolina fifteen times, or about every second or third week of work. (Doc. 5 ¶ 17; Doc. 9 ¶¶ 6-7.) Wright alleges that, "[a]s a high level executive, I was 'on call' twenty-four hours per day, seven days per week." (Doc. 7 ¶ 9.) He further alleges that he "routinely conducted business," "sought out business prospects and investment for Zacky," conducted telephone conferences, and sent emails on behalf of Zacky all while in North Carolina. (Id. ¶¶ 9-12.) He asserts that he acted "pursuant to the [employment] contract" when traveling to and performing his job in North Carolina.[5]

---

[4] Generally, under North Carolina choice-of-law rules, a contract is governed by the law of the state where the contract is made. Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 601 (4th Cir. 2004).

[5] According to Zacky's CEO, Lillian Zacky, "[t]he duties and responsibilities contemplated in the [employment contract] were intended to be performed in California." (Doc. 5 ¶ 16.)

4

(Doc. 1 ¶ 14; <u>see also</u> Doc. 7 ¶ 8 (stating that, "[a]s part of [his] duties for Zacky," Wright both traveled between California and North Carolina and performed work in both states).) Finally, Zacky issued Wright's payroll check in California and electronically deposited the check into Wright's Regions Bank account in North Carolina. (Doc. 5 ¶ 18; Doc. 7 ¶ 13.)

In June 2014, while Wright was in California, Zacky's CEO — Lillian Zacky — called Wright and informed him that Zacky had terminated Wright's employment.[6] (Doc. 1 ¶ 15; Doc. 5 ¶ 21; Doc. 7 ¶ 2.) On June 30, 2014, Zacky's counsel — David Elbaz — sent Wright a letter outlining California employment law and providing several reasons for Wright's termination. (Doc. 5-2.)

Shortly thereafter, on July 7, 2014, Wright filed the present action alleging breach of contract. (Doc. 1 ¶¶ 16–21.) Zacky responded with the current motion to dismiss or transfer, filing two affidavits from current employees. (Docs. 2, 4–5.) Wright responded (Doc. 6) and included his own affidavit (Doc. 7). Zacky replied (Doc. 8) and included another affidavit (Doc. 9). The motion is now ready for resolution.

## II. ANALYSIS

Zacky argues both that this court lacks personal

---

[6] Wright's complaint alleges that he was fired "on or about June 17, 2014." (Doc. 1 ¶ 15.) Yet, in an affidavit attached to his response, Wright states that Zacky fired him on June 30, 2014. (Doc. 7 ¶ 2.) The court need not resolve this factual discrepancy to decide the present motion, and Wright does not dispute that he was first told of his termination by Lillian Zacky while he was in California.

5

jurisdiction over it under Rule 12(b)(2) and that venue in this district is improper under Rule 12(b)(3). Because this court finds that it lacks personal jurisdiction over Zacky, it need not reach Zacky's argument regarding the propriety of venue.

**A. Standard of Review**

Wright bears the burden of establishing personal jurisdiction by a preponderance of the evidence. See Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014); Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). "When, however, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst, 334 F.3d at 396; see also Combs, 886 F.2d at 676. "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993); see also Carefirst, 334 F.3d at 396. If the existence of jurisdiction turns on disputed factual questions, the court may resolve the challenge on the basis of an evidentiary hearing or, when a prima facie demonstration of personal jurisdiction has been

6

made, it can proceed "as if it has personal jurisdiction over th[e] matter, although factual determinations to the contrary may be made at trial." Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp., 812 F. Supp. 2d 710, 717 (E.D. Va. 2011) (citing 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.31 (3d ed. 2011)); see also Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp., 737 F. Supp. 925, 926 (W.D. Va. 1990) ("When conflicting facts are contained in the affidavits, they are to be resolved in the plaintiff's favor."). Nevertheless, either at trial or at a pretrial evidentiary hearing, the plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 n.5 (4th Cir. 2005).

### B. Personal Jurisdiction

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 710 (4th Cir. 2002); see also Daimler AG v. Bauman, 134 S. Ct. 746, 753 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). To determine whether personal jurisdiction is proper, the court engages in a two-part inquiry: first, North Carolina's long-arm statute must

7

provide a statutory basis for the assertion of personal jurisdiction, and, second, the exercise of personal jurisdiction must comply with due process. See Carefirst, 334 F.3d at 396; Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 677 (M.D.N.C. 2011).

Although not citing a specific provision of North Carolina's long-arm statute, both parties cite Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209 (4th Cir. 2001), which held that N.C. Gen. Stat. § 1-75.4(1)(d) runs coextensive with the federal Due Process Clause, thereby collapsing the two-step process "into a single inquiry" as to whether the non-resident defendant has such "minimal contacts" with North Carolina that exercising jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." Christian Sci., 259 F.3d at 215 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); see also Cambridge Homes of N.C., LP v. Hyundai Const., Inc., 670 S.E.2d 290, 295 (N.C. Ct. App. 2008) ("When personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry — whether defendant has the minimum contacts necessary to meet the requirements of due process." (quoting Filmar Racing, Inc. v. Stewart, 541 S.E.2d 733, 736 (N.C. Ct. App. 2001))). The Fourth Circuit recently confirmed its

interpretation of North Carolina's long-arm statute, holding that the issue of specific jurisdiction under N.C. Gen. Stat. § 1-75.4(1)(d) "merges" the two-prong test "into the single question" of whether a defendant has "sufficient contacts with North Carolina to satisfy constitutional due process." Universal Leather, 773 F.3d at 558-59. Thus, the single inquiry here is whether the exercise of personal jurisdiction over Zacky "is consonant with the strictures of due process." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012); see also Universal Leather, 773 F.3d at 558-59.

Under the Due Process Clause, personal jurisdiction over a defendant may be either general or specific. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn.8 & 9 (1984); Tire Eng'g & Distribution, 682 F.3d at 301 ("The Due Process Clause contemplates that a court may assert jurisdiction over a nonresident defendant through either of two independent avenues."). The Supreme Court has recently held that aside from the "exceptional case," general personal jurisdiction over a corporation is usually only appropriate in the corporation's state of incorporation or principal place of business. See Daimler, 134 S. Ct. at 761

n.19. Perhaps for this reason, Wright only argues that specific jurisdiction applies. (<u>See</u> Doc. 6 at 5.)

Specific personal jurisdiction requires "that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." <u>CFA Inst. v. Inst. of Chartered Fin. Analysts of India</u>, 551 F.3d 285, 292 n.15 (4th Cir. 2009). A court may exercise specific jurisdiction when the cause of action "arises out of the defendant's contacts with the forum." <u>Saudi v. Northrop Grumman Corp.</u>, 427 F.3d 271, 276 (4th Cir. 2005). The determination of whether jurisdiction is appropriate depends on the facts and circumstances of each case. <u>See</u> <u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1121 (2014) (holding that the specific jurisdiction inquiry necessitates a study of the interconnection between the defendant, the forum, and the litigation); <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 485–86 (1985).

Specific jurisdiction requires consideration of three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." <u>Tire Eng'g & Distribution</u>, 682 F.3d at 301–02; <u>see also</u> <u>Universal Leather</u>, 773 F.3d at 559. Each prong must be satisfied. <u>See</u> <u>Consulting</u>

10

Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278-79 (4th Cir. 2009).

The "purposeful availment" requirement ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King, 471 U.S. at 475. Rather, a defendant's conduct and connection to the forum must be "such that [it] should reasonably anticipate being haled into court there." Universal Leather, 773 F.3d at 559 (quoting Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989)). If a defendant has created a "substantial connection" to the forum, then it has purposefully availed itself of the privilege of conducting business there. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997) (holding that "contacts related to the cause of action must create a 'substantial connection' with the forum state, although this connection need not be as extensive as is necessary for general jurisdiction" (citation omitted)). Importantly, the connection to the forum "must arise out of contacts that the defendant *himself* creates with the forum State." Walden, 134 S. Ct. at 1122 (quoting Burger King, 471 U.S. at 475) (quotation marks omitted).

11

This purposeful availment inquiry is "flexible" and includes an evaluation of: (1) "whether the defendant maintains offices or agents in the forum state"; (2) "whether the defendant owns property in the forum state"; (3) "whether the defendant reached into the forum state to solicit or initiate business"; (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state"; (5) "whether the parties contractually agreed that the law of the forum state would govern disputes"; (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship"; (7) "the nature, quality and extent of the parties' communications about the business being transacted"; and (8) "whether the performance of contractual duties was to occur within the forum." Consulting Eng'rs, 561 F.3d at 278 (citations omitted).

Here, this flexible inquiry militates against the exercise of personal jurisdiction over Zacky. Zacky admits that it initially contacted Wright about employment while he resided in North Carolina (Doc. 5 ¶ 12) and negotiated the terms of employment via email while Wright resided in the state (Doc. 7 ¶ 6.).[7] While Wright worked for Zacky, some Zacky employees knew

---

[7] Wright alleges that he "negotiated the terms of [his] employment via email *while being a resident of North Carolina*." (Doc. 7 ¶ 6 (emphasis added).) Drawing reasonable inferences in Wright's favor, the court assumes that those email negotiations occurred while he was physically present in North Carolina.

Wright was still living in North Carolina, as Wright received reimbursement for his flights back to North Carolina. (Doc. 4-1; see also Doc. 5 ¶ 17 (referring to North Carolina as Wright's "home").) Finally, Wright alleges that he performed duties for Zacky when he returned to North Carolina "pursuant to" his employment contract. (Doc. 1 ¶ 14; Doc. 4-1; Doc. 7 ¶ 8.) Those duties performed in North Carolina on behalf of Zacky included seeking business prospects and investment, conducting telephone conferences, and communicating with Zacky employees via email. (Doc. 7 ¶¶ 9-12.)

Those allegations, however, fail to make out a prima facie showing of personal jurisdiction. First, Wright's allegations regarding Zacky's negotiations with him are insufficient to extend personal jurisdiction over the company. See Consulting Eng'rs, 561 F.3d at 281–82 (holding that, even combined with a contract's choice-of-law provision selecting Virginia law, "four brief emails, several telephone conversations . . ., and the exchange of the various drafts" was insufficient to show purposeful availment of forum state); Foster v. Arletty 3 Sarl, 278 F.3d 409, 415 (4th Cir. 2002) (concluding that contacting a resident of a state and "fleeting communication by telephone and fax" are not sufficient to show purposeful availment of that state's laws); Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 151 (6th Cir. 1997) (finding that telephone calls and

13

faxes relating to a contract were insufficient to make a prima facie showing for the exercise of personal jurisdiction); Houseman v. DPI Food Products, Inc., No. CIV.A. 2005-66, 2005 WL 2656123, at *4 (E.D. Ky. Oct. 18, 2005) (declining to exercise personal jurisdiction although defendant contacted and held numerous phone conversations with plaintiff while plaintiff was in the forum state).

Moreover, Zacky never sent an employee to North Carolina at any point during the parties' negotiations. (Doc. 5 ¶ 14.) All of Zacky's communications with Wright in North Carolina occurred via email. (Doc. 7 ¶ 6.) In finalizing the negotiations, Zacky alone drafted the contract, and Wright makes no allegation that they exchanged any contract drafts while he was in North Carolina. (Doc. 1 ¶ 10); see also Houseman, 2005 WL 2656123, at *4-5 (declining to extend personal jurisdiction despite defendant emailing employment contract to plaintiff and plaintiff signing the contract in the forum state). Zacky had Wright travel to California to execute the employment contract. (Doc. 5 ¶ 13); see also Conti v. Pneumatic Prods. Corp., 977 F.2d 978, 982 (6th Cir. 1992) (concluding that personal jurisdiction did not exist although defendants "paid for and mailed airline tickets to [employee in forum state], mailed other materials directly to [employee in forum state], conducted extensive contract negotiations with [employee in forum state]

14

through [a third party], and mailed an employment contract offer letter [employee in forum state]"); U.S. ex rel. Hadid v. Johnson Controls, Inc., No. 04-60146, 2005 WL 1630098, at *3 (E.D. Mich. July 7, 2005) (refusing to exercise personal jurisdiction over employer in part because employee entered into employment contract outside of forum state); cf. Tire Eng'g & Distribution, 682 F.3d at 304 (finding purposeful availment where parties "forged an agreement in the forum state"). The parties then executed the contract when Wright was in California. (Doc. 1 ¶ 10; Doc. 5 ¶¶ 13-15.)

Zacky also maintained no consistent contact with North Carolina, suggesting the lack of a substantial connection with the state. Zacky has no offices in North Carolina, and Wright makes no allegation that Zacky provided him with an office while in North Carolina. (Doc. 5 ¶ 6); cf. Tire Eng'g & Distribution, 682 F.3d at 303-04 (finding purposeful availment where defendant met and employed individual with office in Virginia). Zacky is not registered to do business in North Carolina, ships no goods to North Carolina, and holds no bank accounts in North Carolina. (Doc. 5 ¶¶ 7-9.) And, outside of Wright's contention that his employment contract authorized him to "conduct business" in North Carolina, Zacky conducted no business operations in North Carolina and has no employees in the state. (Id. ¶¶ 5-9); see also Burger King, 471 U.S. at 476 (noting that "territorial

presence frequently will enhance a potential defendant's affiliation with a State"); Foster, 278 F.3d at 415 (noting the lack of defendants' offices, agents, or employees in state as evidence of no purposeful availment).

Further evidencing its intent to avoid contact with North Carolina, Zacky required that Wright move to California within the year and envisioned no long-term relationship subjecting it to jurisdiction in North Carolina. Cf. Burger King, 471 U.S. at 479 (upholding extension of personal jurisdiction where defendant "entered into a carefully structured 20-year relationship" through "the purchase of a long-term franchise" in forum state); Demirs v. Plexicraft, Inc., 754 F. Supp. 250, 253 (D.R.I. 1990) (exercising personal jurisdiction over employer who provided employee with office in forum state and permitted the employee to conduct business for corporation in forum state for twenty years). Zacky even provided Wright with a $20,000 stipend specifically to relocate to California (Doc. 4-1), where Wright spent the vast majority of his time (Doc. 5 ¶ 17). And, rather than relocate to California as contemplated, Wright spent most of his $20,000 relocation package - $14,373.06 - on fifteen flights back to North Carolina on weekends over the nine-month period of employment. (Doc. 9 ¶ 8; see also id. at 4-14 (expense reports filed by Wright).)

16

And while Wright performed duties under his contract in
North Carolina, neither Zacky nor the contract required him *to
be in North Carolina* while performing those duties.   (See Doc.
4-1.)   To the contrary, Zacky wanted Wright out of North
Carolina and in California.   Zacky's acquiescence to Wright's
return trips to North Carolina on the fifteen weekends is
insufficient to make a prima facie showing of personal
jurisdiction.   See Walden, 134 S. Ct. at 1125 (observing that
"[p]etitioner's actions in Georgia did not create sufficient
contacts with Nevada simply because he allegedly directed his
conduct at plaintiffs *whom he knew* had Nevada connections"
(emphasis added)); Kulko v. Superior Court of Cal. In & For City
& Cnty. of San Francisco, 436 U.S. 84, 94 (1978) (holding that
defendant's "acquiescence" is not enough to confer jurisdiction
over him); File Image Servs., LLC v. Klein, No. 09-C-484, 2009
WL 2412443, at *2 (E.D. Wis. Aug. 5, 2009) ("The defendants had
a contract with the plaintiff.   There is no suggestion that the
contract specified where the work was to be performed.   Even
assuming that the defendants were fully aware that the plaintiff
had relocated to Wisconsin, this is insufficient to cause the
defendants to be subject to the jurisdiction of Wisconsin
courts.   The defendants did not purposefully avail themselves of
doing business in the forum state, and the Wisconsin courts lack
personal jurisdiction over the defendants."); Rosenberg v.

17

Deutsche Bank AG, No. 11-CV-02200, 2012 WL 3744632, at *5 (D. Colo. May 22, 2012) (finding a deficient showing of personal jurisdiction over employer where, after granting employee leave to work from home, it knew employee had decided to relocate to and work in forum state), report and recommendation adopted sub nom. Rosenberg v. Deutsche Bank A.G., No. 11-CV-02200, 2012 WL 3744631 (D. Colo. Aug. 28, 2012).

Finally, the alleged breach of the contract arises out of conduct occurring while all parties were in California. Knowing that Wright was also in California, Zacky CEO Lillian Zacky informed him that Zacky was terminating his employment. (Doc. 5 ¶ 21); see also Walden, 134 S. Ct. at 1125 ("[M]ere injury to a forum resident is not a sufficient connection to the forum."); Consulting Eng'rs, 561 F.3d at 279-80 (finding no personal jurisdiction where activity complained of occurred outside the forum state); cf. Tire Eng'g & Distribution, 682 F.3d at 303-04 (observing that the "critical part of" the allegations related to plaintiff's complaint occurred in forum state when finding purposeful availment of that state).

Under these circumstances, the exercise of jurisdiction over Zacky would violate due process. Zacky did much to avoid contact with North Carolina and, if anything, purposefully avoided contact with the state while hiring and employing Wright. It was not reasonably foreseeable to Zacky that the

18

execution and alleged breach of a contract in California might cause it to be haled into court in North Carolina. See Foster, 278 F.3d at 415 (holding that defendants' contacts were "not such that [they] should reasonably anticipate being haled into court in [the forum state]").

Even assuming that Zacky's limited contact with North Carolina amounts to purposeful availment, Wright also fails to make a prima facie showing that the exercise of personal jurisdiction would be constitutionally reasonable in this case. Tire Eng'g & Distribution, 682 F.3d at 301–02. Determining the constitutional reasonableness of the extension of personal jurisdiction requires the consideration of numerous factors, including "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Consulting Eng'rs, 561 F.3d at 279.

First, Zacky is domiciled in California and primarily conducts its business in the western part of the United States. Most of the potential witnesses (i.e., Zacky employees) would likely be required to travel from California to North Carolina. Second, North Carolina has little interest in a contract

19

executed in California, performed almost entirely outside of North Carolina, and terminated in California. Third, Wright admittedly has an interest in obtaining convenient and effective relief. Fourth, the shared interests of states in efficient resolution of this controversy cut against the exercise of jurisdiction, as the basis of the suit — the dispute over Wright's performance under the employment contract — lies elsewhere, not in North Carolina. Finally, Wright points to no substantive policy furthered by litigating this case in North Carolina, and the court cannot find any policy furthered by forcing a California company into court in North Carolina over the alleged breach of an employee contract that the parties executed in California, contemplated performance in California, required and paid the employee to live in California, and was terminated in California.

### C. Transfer

When personal jurisdiction is lacking, 28 U.S.C. § 1406(a) authorizes the court to transfer the case, regardless of the propriety of venue. <u>Porter v. Groat</u>, 840 F.2d 255, 257–58 (4th Cir. 1988); <u>Convergence Technologies (USA), LLC v. Microloops Corp.</u>, 711 F. Supp. 2d 626, 640 (E.D. Va. 2010); <u>Estate of Bank v. Swiss Valley Farms Co.</u>, 286 F. Supp. 2d 514, 522 (D. Md. 2003) ("Transfer had [sic] been deemed proper under section 1406 when there is an obstacle — either incorrect venue, absence of

20

personal jurisdiction, or both — to a prompt adjudication on the merits in the forum where originally brought." (quoting Dubin v. United States, 380 F.2d 813, 816 (5th Cir. 1967)) (quotation marks omitted)). Section 1406 states that a district court may transfer a case to any district in which the case could have been brought if transfer is "in the interest of justice."

Zacky argues that this court should dismiss the case for lack of personal jurisdiction or venue but alternatively argues for a transfer under § 1406(a) to the Eastern District of California. (Doc. 3 at 11.)

To be sure, the case could have been brought in the Eastern District of California. Zacky is a California limited liability company, and its principal place of business is in Fresno, California (Doc. 5 ¶ 4), which lies in the Eastern District of California. That court thus has personal jurisdiction, and venue is proper there. See Fed. R. Civ. P. 4(k)(1)(A); Cal. Civ. Proc. § 401.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); 28 U.S.C. § 1391(d) (stating that venue is proper when "a defendant that is a corporation . . . reside[s] in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced"). Thus, the Eastern District of California is a

forum in which the action properly "could have been brought" to obtain personal jurisdiction over Zacky.

Moreover, a transfer to the Eastern District of California is in the interest of justice. Section 1406(a) favors "adjudications on the merits over dismissals" because of defects in personal jurisdiction. Porter, 840 F.2d at 257 (authorizing transfer "for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district"); see also Estate of Bank, 286 F. Supp. 2d at 522 (authorizing transfer following court's finding that it lacked personal jurisdiction); 14D Charles Alan Wright et al., Federal Practice and Procedure § 3827 (4th ed. 2013) ("District courts [when analyzing § 1406(a)] also are likely to order transfer rather than dismissal if it would be more efficient or economical."). There also appears to be no "obvious error" suggesting that this court should deny a transfer and instead dismiss the case. Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201–02 & n.6 (4th Cir. 1993) (noting that transfer can properly be denied when plaintiff made an "obvious error").

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of

22

Civil Procedure 12(b)(2) (Doc. 2) is GRANTED and the case is TRANSFERRED to the Eastern District of California pursuant to 28 U.S.C. § 1406(a).

                                    /s/   Thomas D. Schroeder
                                    United States District Judge

May 15, 2015